D. Maimon Kirschenbaum
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiff, and proposed Class*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
HAMILCAR BARCA, on behalf of himself
and others similarly situated,

        Plaintiff,

  v.

URBAN STRATEGIES MANAGEMENT
CORP.,

        Defendant.
--------------------------------------------------------x

Case No.

COMPLAINT

FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION

DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District because Defendant conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

1

## THE PARTIES

3. Defendant Urban Strategies Management Corp. is a New York corporation whose principal place of business is located at 294 Sumpter Street, Brooklyn, New York, 11233.

4. Defendant Urban Strategies Management Corp. is a building management company.

5. Defendant Urban Strategies Management Corp. has an annual revenue in excess of $500,000.

6. Defendant Urban Strategies Management Corp. has employees engaged in interstate commerce and handling, selling, or otherwise working on goods and materials that have been moved in or produced for interstate commerce.

7. Plaintiff Hamilcar Barca was employed by Defendant as a Maintenance Worker from October 2024 through January 2025.

## FLSA COLLECTIVE ACTION ALLEGATIONS

8. Plaintiff brings the First Claim for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt hourly manual workers employed by Defendant on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

9. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully retaining their tips and failing to pay them the proper overtime rate. The claim of Plaintiff stated herein is essentially the same as those of the other FLSA Collective Plaintiffs.

10. The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to the FLSA Collective Plaintiffs via first class mail, email, and text message to the last address, email address, and phone number known to Defendant.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

11. Plaintiff bring the state law wage and hour Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt hourly manual workers employed by Defendant on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

12. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under said F.R.C.P. 23.

13. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendant, upon information and belief, there are more than forty (40) members of the Class.

14. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay minimum wage, the correct overtime wage, to pay owed wages on a weekly basis, failing to pay the agreed rate for all hours worked, and failing to provide required wage notices and correct wage statements. Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

15. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiff in wage and hour cases.

16. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to

redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

17. Upon information and belief, Defendant and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

18. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

 a) Whether Defendant employed Plaintiff and the Class members within the meaning of New York law.

 b) At what common rate, or rates subject to common methods of calculation, were and is Defendant required to pay Plaintiff and the Class members for their work.

c) Whether Defendant paid Plaintiff and the Class members the minimum wage for all hours worked.

d) Whether Defendant paid Plaintiff and the Class members their agreed rate for all hours worked.

e) Whether Defendant paid Plaintiff and the Class members the correct overtime rate for all hours worked over forty (40) hours in a workweek.

f) Whether Defendant paid Plaintiff and the Class Members on a weekly or bi-weekly basis.

g) Whether Defendants provided Plaintiff and Class members with the proper wage notices/statements.

## FACTS

### Wage and Hours Facts

19. Plaintiff's Consent to Sue form is attached as Exhibit A.

20. Defendant committed the following alleged acts knowingly, intentionally and willfully.

21. Defendant knew that the nonpayment of minimum wage, overtime wage, and other compensation would economically injure Plaintiff, the FLSA Collective Plaintiffs, and members of the Class and violate federal and state laws.

22. Defendant owns and maintains dozens of buildings in Brooklyn and Manhattan, New York.

23. Plaintiff worked for Defendant as a Maintenance Worker from October 2024 through the end of January 2025.

24. Defendant employees dozens of Maintenance Workers at any given time.

25. Plaintiff's job duties included, but were not limited to, doing maintenance and upkeep work on Defendant's buildings, managing the garbage at Defendant's buildings, cleaning Defendant's buildings, painting Defendant's buildings, shoveling and sweeping at Defendant's buildings, and responding to tenant issues and complaints related to the maintenance of Defendant's buildings.

26. Plaintiff was a manual worker as defined in the New York Labor Law.

27. Plaintiff spent well over 25% of his working time doing physical labor – e.g., cleaning, mopping, sweeping, painting, shoveling, moving materials, taking out the garbage, making repairs, etc.

28. Defendant paid Plaintiff every two weeks, even though New York law requires employers to pay manual workers on a weekly basis.

29. When Plaintiff was hired in September 2024, Defendant agreed to pay Plaintiff an hourly rate of $17.50 per hour.

30. However, Defendant did not pay Plaintiff properly for all hours worked, including both regular and overtime hours.

31. For example, during the week of November 18-24, 2024, Plaintiff worked 47 hours, and during the week of November 23-December 1, 2024, Plaintiff worked 40 hours, for a total of 87 hours during this two-week period. Thus, Plaintiff was entitled to be paid $1,583.75 for these two weeks (80 regular hours * $17.50 ($1,400) + 7 overtime hours * $17.50 * 1.5 ($183.75)).

32. However, for these two weeks, Defendant paid Plaintiff just $1,330.00, which was below even the applicable New York State minimum wage and did not include required overtime compensation.

33. Defendant paid Plaintiff in a bifurcated manner. Every two weeks, Plaintiff would provide Plaintiff with a normal paycheck, with a pay stub reflecting far fewer hours than he actually worked and no overtime hours. Then Defendant would also give Plaintiff a handwritten check that did not provide any information about the time period it was intended to cover, the number of hours for which Plaintiff was being paid, or Plaintiff's rate of pay.

34. As a result, Defendant did not provide Plaintiff with adequate wage statements reflecting the basis for his compensation – i.e., his regular and overtime hours worked and his regular and overtime rates of pay. Further, because Defendant did not provide any wage statement for the handwritten check portion of his pay, Plaintiff does not know if Defendant took lawful deductions from the handwritten checks and thus is unable to calculate the actual rate that Defendant paid him. The lack of wage statements injures Plaintiff's ability to know the precise amount that he was underpaid and hurts his ability to be compensated as the law requires.

35. Moreover, the paystubs that were provided to Plaintiff did not contain the correct number of hours that Plaintiff worked. As a result, Plaintiff's ability to advocate for himself and show that he was not paid the correct amount for all of the time that he worked is harmed by Defendant's failure to provide accurate wage statements. To be sure, when Plaintiff complained to his managers that he was underpaid, because Defendant did not provide him with accurate wage statements, he was unable to show the exact amount that he was underpaid and as a result Defendant brushed off his attempts to be paid legally. This is the precise injury that the NYLL wage statement requirements were enacted to prevent.

36. Further, had Defendant included all of his work hours on his paystubs, Plaintiff would have likely been paid for all of the hours he worked. That is, as a result of Defendant not including all of the hours he worked on his paystubs, Plaintiff was underpaid.

37. In addition, Defendant never provided Plaintiff with a written wage notice stating his hourly compensation rate or his overtime compensation rate.

38. As a result of Defendant's failure to provide this notice, Plaintiff's ability to advocate for himself is harmed. To be sure, because Defendant failed to provide Plaintiff with a wage notice as required by law, when Plaintiff complained to his managers he was unable to get Defendant to acknowledge that he was owed an overtime rate for hours worked over 40 in a week or that he was owed his hourly compensation for every hour that he worked. As a result, Plaintiff was underpaid. Had Defendant provided Plaintiff with a legally adequate wage notice that included Plaintiff's regular rate of pay and overtime rate of pay, Plaintiff would have been, and would now be, in a better position to assert that Defendant pay him for the regular and overtime hours that he is owed and to be legally compensated for his work.

39. Defendant committed the foregoing acts against Plaintiff, the FLSA Collective Members, and the Class.

### Retaliation Facts

40. In December 2024, Plaintiff complained to Defendant's Payroll Master, Donna Marshall about not being paid for all hours that he worked. Specifically, Plaintiff complained to Ms. Marshall that Defendant had not paid him for "garbage runs" (taking out the garbage) and snow shoveling that he was required to perform after his scheduled shift was over. Plaintiff told Ms. Marshall that he was not going to do the work going forward unless Defendant paid him for it and that they corrected the underpayments for his previous work.

41. On January 6, 2025, Defendant's Program Director, Gary Golden, and Plaintiff's direct supervisor, scheduled a meeting with Plaintiff. At this meeting, Mr. Golden asked Plaintiff about his complaints to Ms. Marshall and informed Plaintiff that he had heard Plaintiff was refusing

to do the extra garbage and snow shoveling work. Mr. Golden told Plaintiff that these duties were part of the job. Plaintiff clarified and told Mr. Golden that he would be willing to do these tasks if Defendant paid him for the time that it took for him to complete the tasks, and if Defendant paid him for his previous unpaid work doing these tasks. Mr. Golden told Plaintiff that Plaintiff was on a probationary period that ended on January 31 and that if he did not complete these extra tasks Defendant would not continue with his employment and would have to hire someone else. Plaintiff reiterated his willingness to do these tasks, so long as he was paid for doing so.

42. The week of January 6, 2025, Plaintiff only worked his normal schedule – 5 days a week, from 7am to 3pm. Plaintiff did not do any of the extra garbage or snow removal work that he had been doing in 2024 because Defendant had not committed to paying him for this work and owed him back pay for doing this type of work previously.

43. On January 13, 2025, Defendant retaliated against Plaintiff for complaining about Defendant's unlawful pay practices and for refusing to work without pay by reducing his scheduled hours. On January 13, Ms. Marshall informed Plaintiff that going forward Defendant would only schedule Plaintiff to work 7am to 11am, unless otherwise directed.

44. On January 17, 2025, Plaintiff complained, again, to Ms. Marshall because Plaintiff's paycheck was short and did not reflect all of the hours Plaintiff worked. Plaintiff requested that Defendant show him the time records and the pay calculation for his checks because he believed they were short. In response, Ms. Marshall only asked whether Plaintiff would agree to shovel snow on Plaintiff's day off. Because Defendant had never paid him for this type of work previously and Defendant had not committed to paying him for it now, Plaintiff declined.

45. On January 24, 2025, Mr. Golden informed Plaintiff that Plaintiff's probationary period was being extended until February 10. However, Mr. Golden then told Plaintiff that unless

he was "available" to do the extra garbage work and snow removal, that Defendant would fire Plaintiff at the end of the probationary period. That is, Defendant made their intention known that they would fire Plaintiff on February 10 because he refused to do unpaid work.

46. Plaintiff explained to Mr. Golden, again, that he would only do this work if he was paid properly for it – that is, if he was paid the correct and legal rate for all his hours. Plaintiff further explained that he had complained to Ms. Marshall about not being paid correctly and that Defendant owed him back pay for unpaid work hours. Mr. Golden assured Plaintiff that he would look into it and correct the underpayments on his next paycheck.

47. On January 31, 2025, after receiving his next paycheck which did not contain pay for all his previous unpaid work, Plaintiff resigned. No reasonable person would continue working in a situation where they would be required to do unpaid work and if they refused, they would be fired for doing so. Plaintiff's resignation constitutes a constructive discharge.

48. Plaintiff lost his employment with Defendant because he complained about not being paid for all hours he worked, including overtime hours, and because he refused to continue doing work for which Defendant refused to pay him. This is unlawful retaliation.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.*)**
**(Brought by Plaintiff on Behalf of Himself**
**and the FLSA Collective Plaintiffs)**

49. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

50. Throughout the statute of limitations period covered by these claims, Plaintiff and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

51. At all relevant times, Defendant operated under a decision, policy, and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully

failing and refusing to pay Plaintiff and the other FLSA Collective Plaintiffs the appropriate overtime rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

52. At all relevant times, Defendant willfully, regularly and repeatedly failed to pay Plaintiff and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

53. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post- judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(New York Overtime Violations,**
**N.Y. Lab. L. § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. Tit. 12, § 141-1.4)**
**(Brought by Plaintiff on Behalf of Himself and the Class)**

54. Plaintiff, on behalf of himself and the Class Members, realleges and incorporates by reference all previous paragraphs.

55. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty (40) hours in any workweek.

56. Throughout the Class Period, Defendant willfully, regularly, and repeatedly failed to pay Plaintiff and the Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

57. As a result of Defendant's willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### THIRD CLAIM FOR RELIEF
**(New York State Minimum Wage Act, New York Labor Law § 650 *et seq*.
N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.9)
(Brought By Plaintiff on Behalf of Himself and the Class)**

58. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

59. Defendant knowingly failed to pay Plaintiff and the Class members the full New York State minimum wage for all hours worked.

60. As a result of Defendant's unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### THIRD CLAIM FOR RELIEF
**(New York Unpaid Wages/Unlawful Deductions, N.Y. Lab. L. §§ 191, 193, 198)
(Brought by Plaintiff on Behalf of Himself and the Class)**

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

62. Defendant knowingly and intentionally failed to pay Plaintiff and the Class Members their agreed rates of pay for every hour that they worked.

63. As a result of Defendant's willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### FOURTH CLAIM FOR RELIEF
**(New York Late Payment of Wages, N.Y. Lab. L. §§ 191, 198)
(Brought by Plaintiff on Behalf of Himself and the Class)**

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

65. At all relevant times, Plaintiff and the Class Members were and are manual laborers under the NYLL.

66. Defendant did not pay Plaintiff and the Class members on a weekly basis.

67. Instead, Defendant paid Plaintiff and the Class members every other week.

68. Plaintiff, and the members of the Class, are thereby entitled to recover from Defendant liquidated (double) damages in the amount of their untimely paid wages, as provided by the NYLL for wage violations, interest, and attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**(New York Notice Requirements, N.Y. Lab. L. §§ 195, 198)**
**(Brought By Plaintiff on Behalf of Himself and the Class)**

69. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

70. Defendant did not provide Plaintiff and members of the Class with the wage notices/statements required by N.Y. Lab. Law § 195(1), (3).

71. As a result of Defendant's unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages in amount to be determined at trial and costs and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
**(FLSA, 29 U.S.C. § 215 - Retaliation)**
**(Brought by Plaintiff on Behalf of Himself)**

72. Plaintiff realleges and incorporates by reference all previous paragraphs.

73. In violation of the FLSA, Defendant intentionally retaliated against Plaintiff and constructively discharged him because he complained about not being paid all the wages he was owed, including overtime pay.

74. Defendant's conduct was willful, malicious, and/or wanton.

75. As a direct and proximate consequence of Defendant's retaliation against Plaintiff, he has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, embarrassment, humiliation, and anguish.

As a result of Defendant's retaliatory conduct, Plaintiff is entitled to recover back pay, front pay, liquidated damages, damages for emotional distress, punitive damages, pre/post judgment interest, attorneys' fees and costs, and other such legal and equitable relief as the Court deems just and proper

## SEVENTH CLAIM FOR RELIEF
**(New York Labor Law, N.Y. Lab. L. § 215 – Retaliation)**
**(Brought by Plaintiff on Behalf of Himself)**

76. Plaintiff realleges and incorporates by reference all previous paragraphs.

77. In violation of the NYLL, Defendant intentionally retaliated against Plaintiff and constructively discharged him because he complained about not being paid overtime and for every hour that the worked.

78. Defendant's conduct was willful, malicious, and/or wanton.

79. As a direct and proximate consequence of Defendant's retaliation against Plaintiff, he has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, embarrassment, humiliation, and anguish.

80. As a result of Defendant's retaliatory conduct, Plaintiff is entitled to recover back pay, front pay, liquidated damages, damages for emotional distress, punitive damages, pre/post

judgment interest, attorneys' fees and costs, and other such legal and equitable relief as the Court deems just and proper.

### EIGHTH CLAIM FOR RELIEF
### (New York Labor Law, N.Y. Lab. L. § 740 – Retaliation)
### (Brought by Plaintiff on Behalf of Himself)

81. Plaintiff realleges and incorporates by reference all previous paragraphs.

82. In violation of the NYLL, Defendant intentionally retaliated against Plaintiff and constructively discharged him because he refused to participate in an activity that Plaintiff reasonably believed was in violation of the law.

83. Defendant's conduct was willful, malicious, and/or wanton.

84. As a direct and proximate consequence of Defendant's retaliation against Plaintiff, he has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, embarrassment, humiliation, and anguish.

85. As a result of Defendant's retaliatory conduct, Plaintiff is entitled to recover back pay, front pay, liquidated damages, damages for emotional distress, punitive damages, pre/post judgment interest, attorneys' fees and costs, and other such legal and equitable relief as the Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all

    similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Designation of Plaintiff as Representative of the FLSA Collective;

C. Designation of this action as a class action pursuant to F.R.C.P. 23.

D. Designation of Plaintiff as Representative of the Class.

E. An award of damages, according to proof, including liquidated damages, to be paid by Defendant;

F. Penalties available under applicable laws;

G. Costs of action incurred herein, including expert fees;

H. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. §§ 198, 215, 663 and other applicable statutes;

I. Pre-judgment and post-judgment interest, as provided by law; and

J. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

| | |
|---|---|
| Dated:  New York, New York<br>          February 11, 2025 | Respectfully submitted,<br><br>JOSEPH & KIRSCHENBAUM LLP<br><br><br>By: */s/ Michael DiGiulio*<br>     Michael DiGiulio<br>     32 Broadway, Suite 601<br>     New York, NY 10004<br>     Tel: (212) 688-5640<br>     Fax: (212) 981-9587<br><br>*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class* |

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.